Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAEL RESPLER, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| THE MEET GROUP, INC., JEAN CLIFTON, GEOFFREY COOK, CHRISTOPHER FRALIC, SPENCER RHODES, KEITH RICHMAN, BEDI AJAY SINGH, and JASON WHITT, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Yael Respler ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against The Meet Group, Inc. ("Meet Group" or the "Company") and the members of Meet Group's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Meet Group will be acquired by NCG - NUCOM GROUP SE ("NuCom"), a European stock corporation jointly held by ProSiebenSat.1 Media SE ("ProSieben") and General Atlantic Coöperatif U.A. ("General Atlantic"), through NuCom's platform company Parship Group, GmbH ("Parship"), Parship's wholly owned subsidiary eHarmony Holding, Inc. ("Buyer") and Holly Merger Sub, Inc. ("Merger Sub" and together with NuCom, ProSieben, General Atlantic, Parship and Buyer, the "Buyer Parties") (the "Proposed Transaction").

2. On March 5, 2020, Meet Group and the Buyer Parties issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 5, 2020 (the "Merger Agreement") to sell Meet Group to the Buyer Parties. Under the terms of the Merger Agreement, each holder of Meet Group common stock will receive $6.30 in cash for each share of Meet Group common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $500 million.

3. On April 22, 2020, Meet Group filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Meet Group stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, BofA Securities, Inc.

("BofA Securities");  and (ii) BofA Securities' and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Meet Group's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates an office in San Francisco, which is located in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Meet Group.

- 3 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9. Defendant Meet Group is a Delaware corporation, with its principal executive offices located at 100 Union Square Drive, New Hope, Pennsylvania 18938 and an office located at 848 Battery St, San Francisco, California 94111. The Company is a leading provider of interactive live-streaming solutions. Meet Group's common stock trades on the NASDAQ Global Select Market under the ticker symbol "MEET."

10. Defendant Jean Clifton ("Clifton") has been a director of the Company since June 2013.

11. Defendant Geoffrey Cook ("Cook") has been Chief Executive Officer ("CEO") of the Company since March 2013 and a director of the Company since November 2011. Defendant Cook previously served as Chief Operating Officer of the Company from November 2011 until March 2013.

12. Defendant Christopher Fralic ("Fralic") has been a director of the Company since February 2017.

13. Defendant Spencer Rhodes ("Rhodes") has been Chairman of the Board since July 2016 and a director of the Company since April 2013.

14. Defendant Keith Richman ("Richman") has been a director of the Company since December 2019.

15. Defendant Bedi Ajay Singh ("Singh") has been a director of the Company since September 2017.

16. Defendant Jason Whitt ("Whitt") has been a director of the Company since August 2014.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. ProSiebenSat.1 is a European mass media company headquartered in Unterföhring, Germany.

19. General Atlantic is a global growth equity firm with more than 150 investment professionals based in New York, Amsterdam, Beijing, Greenwich, Hong Kong, Jakarta, London, Mexico City, Mumbai, Munich, Palo Alto, São Paulo, Shanghai, and Singapore.

20. NuCom is a European stock corporation and jointly-held company of ProSiebenSat.1 and General Atlantic.

21. Parship, a portfolio company of NuCom, operates a platform of matchmaking brands, including Parship, Elite Partner and eHarmony.

22. Buyer is a Delaware corporation and a wholly-owned subsidiary of Parship.

23. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Buyer.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

24. Incorporated in Delaware and headquartered in New Hope, Pennsylvania, Meet Group leverages a powerful live video platform ("Live"), empowering its global community to forge meaningful connections. The Company's primary applications are MeetMe, LOVOO, Skout, Tagged and Growlr. The Company operates location-based social networks for meeting new people — primarily on mobile platforms, including on iPhone, Android, iPad and other tablets — that facilitate interactions among users and encourage users to connect, communicate and engage with each other. Over the past three years Meet Group has transformed its business from an advertising-based revenue model to one where the majority of revenue is derived from user pay monetization and subscriptions. The fastest-growing component of user pay monetization comes from in-app purchases, including virtual gifts associated with Live.

25.     The Company first launched Live on the MeetMe app in early 2017, and, in October 2017, began to monetize the feature by enabling virtual gifting within live video broadcasts. During this time period, the Company also executed on its strategy of acquiring other properties — Skout, Inc. ("Skout"), Ifwe, Inc. ("if(we)") and LOVOO GmbH ("LOVOO") — where the Company believed Live would fit naturally. Meet Group launched the monetized version of Live on the Skout app in the fourth quarter of 2017, the Tagged app in the second quarter of 2018 and the LOVOO app in the second quarter of 2018. The Company also continued to add features and enhancements intended to drive video engagement and increase monetization across all of its apps, and intends to launch and monetize Live on the Growlr app — which it acquired in 2019 as part of its acquisition of Initech LLC ("Initech") — in 2020. Live has become the fastest-growing revenue product in Company history.

26.     On November 7, 2019, Meet Group announced its third quarter ("Q3") financial results. Q3 2019 highlights included: (i) Total revenue of $52.6 million, up 15% from Q3 2018; (ii) GAAP net income of $3.0 million, or $0.04 per diluted share, compared with $1.3 million, or $0.02 per diluted share, in Q3 2018; (iii) Adjusted EBITDA of $11.0 million, compared with $8.7 million in Q3 2018; and (iv) Non-GAAP net income of $10.1 million, or $0.13 per diluted share, compared with $7.6 million, or $0.10 per diluted share, in Q3 2018.

27.     Defendant Cook commented on the results, stating:

> We had a strong third quarter and we are off to a good start in the fourth quarter . . . . Our product strategy and execution contributed to growing revenue and adjusted EBITDA, resulting in record-high free cash flow in the third quarter that we used to repurchase our stock. With the launch of Streamer Levels and one-on-one video chat, we are giving users even more reasons to engage in video. Just last week we further expanded our product portfolio with the launch of NextDate, our new livestreaming dating game. While early, in markets where NextDate is available, we're seeing an approximately 20% increase in daily video users versus September, the month prior to launch.
>
> Video revenue for the third quarter grew approximately 85% from the prior year quarter to $20.3 million . . . . Global average revenue per daily active video user was

$0.27 cents in the quarter, and across our apps we had an average of 829,000 daily video users (20% of our total mobile daily active users where video is available). We expect to grow video revenue in the fourth quarter by 10-16% sequentially as new products and features contribute to increasing user engagement. Video revenue in October exceeded video revenue in every month of the third quarter. Furthermore the Company expects November and December video revenue to continue to increase from October.

Advertising results for the quarter were also solid. Mobile ad revenue, which comprises approximately 90% of our total advertising revenue, grew year-over-year for the first time since the first quarter of 2017. We believe this progress sets the stage for continued positive momentum in the fourth quarter of 2019 and throughout 2020.

In the third quarter we repurchased 3.4 million shares of our stock for $12 million, directing 100% of our free cash flow in the quarter toward repurchases. Since authorizing our share repurchase plan in June 2019, the Company has repurchased $17.7 million (4.8 million shares) through November 5, 2019. We expect to continue to repurchase shares pursuant to our share repurchase program.

Looking to the fourth quarter and longer term, we believe we have compelling products that position us well for future growth. We remain confident that our product pipeline and capital allocation strategy will continue to deliver value to our shareholders.

**The Proposed Transaction**

28.     On March 5, 2020, Meet Group issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

NEW HOPE, Pa.--The Meet Group, Inc. (NASDAQ: MEET), a leading portfolio of mobile dating apps, today announced that it has entered into a definitive agreement to be acquired by ProSiebenSat.1`s and General Atlantic's joint company NuCom Group in an all cash transaction for $6.30 per fully diluted share representing an enterprise value of approximately $500 million. Together with NuCom Group's portfolio company Parship Group, a matchmaking platform with its brands Parship, Elite Partner and eharmony, The Meet Group will become an integral part of a global leader in the online dating and social entertainment sector.

After careful and thorough review, and following consultation with The Meet Group's financial and legal advisors, the transaction was unanimously approved by The Meet Group's board of directors. The purchase price represents a 30% and 43% premium to the unaffected 30 and 60 trading day volume weighted average price, respectively, to The Meet Group's common stock through December 13, 2019, the last trading day prior to published market speculation regarding a potential transaction involving the company.

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"The Meet Group Board of Directors undertook a robust process, which culminated in a transaction that we believe will deliver certain and immediate value to our shareholders," said Spencer Rhodes, Chairman of The Meet Group Board of Directors. "We are excited about this transaction and the significant benefits resulting from a combination with Parship Group," said Geoff Cook, Chief Executive Officer of The Meet Group. "This transaction will allow us to tap new strategic growth opportunities by leveraging our video platform and ProSiebenSat.1's experience with content and entertainment. What's more, with this transaction and the participation of both General Atlantic and ProSiebenSat.1, we will achieve a new level of financial scale and backing, which has the potential to further accelerate our growth."

The Meet Group's freemium dating brands, featuring its industry-leading video platform technology, will be combined with NuCom's portfolio company Parship Group, which operates premium subscription dating brands including eharmony, Parship and Elite Partner. The transaction will diversify the revenue streams of both companies and increase their combined international footprint by broadening the companies' user base.

Max Conze, CEO, ProSiebenSat.1 Media SE: "The acquisition of The Meet Group is one of ProSiebenSat.1's largest transactions. It will significantly advance our ambition to create one of the leading global players in online dating and interactive live video. We believe the combination of these two successful and complementary businesses will also create synergies within the ProSiebenSat.1 universe and accelerate the growth of our market share in the German live video apps sector."

Tim Schiffers, CEO Parship Group: "Following a successful acquisition of eharmony, we have proven that we can manage new businesses and accelerate their growth by combining the best of both worlds. We continue to consolidate our position in the online dating market and extend our business model by adding social entertainment. I am looking forward to working with our new colleagues to solidify our international footprint."

**Insiders' Interests in the Proposed Transaction**

29.     Meet Group insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Meet Group.

30.     Notably, Meet Group insiders stand to reap substantial financial benefits for securing the deal with Parship.  Pursuant to the Merger Agreement, all outstanding options, performance-

based stock units, and restricted stock awards, will vest and convert into the right to receive cash payments.

31. Moreover, if they are terminated in connection with the Proposed Transaction, Meet Group's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Total ($)(3) |
|---|---|---|---|
| Geoff Cook | 1,592,576 | 9,984,438 | 11,577,014 |
| James Bugden | 629,462 | 2,569,477 | 3,198,939 |
| Frederic Beckley | 623,342 | 3,431,175 | 4,054,517 |
| Michael Johnson | 390,029 | 812,230 | 1,202,259 |

**The Proxy Statement Contains Material Misstatements or Omissions**

32. The defendants caused to be filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Meet Group's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, BofA Securities; and (ii) BofA Securities' and Company insiders' potential conflicts of interest.

*Material Omissions Concerning BofA Securities' Financial Analyses*

34. The Proxy Statement omits material information regarding BofA Securities' financial analyses.

35. The Proxy Statement describes BofA Securities' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of BofA Securities' fairness opinion and analyses fails to include key inputs and assumptions underlying

these analyses. Without this information, as described below, Meet Group's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Securities' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36. With respect to BofA Securities' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the value of the Company's net operating loss carryforwards; (ii) the Company's fiscal year 2024 estimated EBITDA; (iii) the terminal values for the Company; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 10.0%.

37. Without such undisclosed information, Meet Group stockholders cannot evaluate for themselves whether the financial analyses performed by BofA Securities were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which BofA Securities' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

38. The omission of this material information renders the statements in the "Opinion of The Meet Group's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning BofA Securities' and Company Insiders' Potential Conflicts of Interest***

39. The Proxy Statement fails to disclose material information concerning the terms of engagements of the Company's financial advisor.

40. According to the Proxy Statement, "[t]he Company has agreed to pay BofA Securities for its services in connection with the Merger an aggregate fee currently estimated to be

approximately $11 million, $1.5 million was payable upon delivery of its opinion and the remainder of which is contingent upon consummation of the Merger." Proxy Statement at 45. The Proxy Statement, however, fails to disclose how BofA Securities' transaction fee, payable contingent upon the consummation of the Proposed Transaction, is calculated

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The Proxy Statement further fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

43. For example, in the March 5, 2020 press release announcing the Proposed Transaction, Tim Schiffers, CEO of Parship, commented: "I am looking forward to working with our new colleagues to solidify our international footprint." The Proxy Statement, however, fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between the Buyer Parties and Meet Group executive officers and directors, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of the Buyer Parties' proposals or indications of interest mentioned management retention, consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company.

44. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45. The omission of this material information renders the statements in the "Opinion of The Meet Group's Financial Advisor," "Background of the Merger," and "Interests of the Company's Directors and Named Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Meet Group will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by BofA Securities, and

- 12 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

BofA Securities' and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

51. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

53. Plaintiff repeats all previous allegations as if set forth in full.

54. The Individual Defendants acted as controlling persons of Meet Group within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Meet Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

57.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Meet Group's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Meet Group, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

           disclose and disseminate the material information identified above to Meet Group stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 24, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
      -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*